UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BERGAL MITCHELL, III,

                Plaintiff,

      v.                              **DECISION AND ORDER**
                                                  12-CV-119-A

SENECA NATION OF INDIANS,
et al.,
                Defendants.

_____

## **INTRODUCTION**

This action seeking habeas corpus relief under the Indian Civil Rights Act, 25 U.S.C. §§ 1301-03 ("ICRA"), was brought following issuance of a tribal resolution by defendant Seneca Nation of Indians ("Nation") that imposes serious restrictions on plaintiff Bergall Mitchell, III, a member of the Nation. The Nation and its co-defendants, a former President of the Nation and members of its Tribal Council who issued the tribal resolution, move pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the action for lack of subject matter jurisdiction on the ground that the restrictions imposed on Mitchell by the tribal resolution are not severe enough to satisfy the "custody" requirement of §1303 and because Mitchell failed to exhaust tribal remedies.

For the reasons stated below, the Court grants defendants' motion to dismiss for lack of subject matter jurisdiction. Mitchell is not subject to custody restrictions sufficient to obtain a writ of habeas corpus. Because subject matter jurisdiction is lacking, the Court need not reach the question whether Mitchell was required to exhaust tribal remedies.

**BACKGROUND**

Plaintiff Mitchell is an enrolled member of the Nation who resides outside Nation territory in Gowanda, New York. As a Nation member, Mitchell is entitled to certain valuable civil rights of membership, including: the rights to enter Nation-owned buildings and participate in tribal affairs; the right to petition for redress and prosecute claims in the Peacemaker's Court; the right to obtain licenses and conduct business on the Nation; and the right to collect annual annuity payments from the Nation. Am. Compl. ¶ 27.

In February 2011, Mitchell was indicted by a federal grand jury on criminal charges of fraud and misconduct stemming from his involvement in a sale of land to the Seneca Niagara Falls Gaming Corporation, a Nation-controlled business. Mitchell has pled not guilty to those charges. However, in response to the criminal charges, and purportedly "to hold [Mitchell] accountable for [his] activities" and protect "the best interests of the Nation," the Tribal Council passed a tribal resolution (the "Resolution") that: (1) prohibits Mitchell from entering any Nation buildings or business except to appear in court to defend himself and to attend scheduled health care appointments at Nation clinics; (2) suspends certain annuity payments due to Mitchell and holds them in escrow pending resolution of his criminal charges and any related civil proceedings; (3) revokes Mitchell's Nation-issued business license; and (4) prohibits all Nation-licensed businesses from doing business with Mitchell. *See* Resolution, Am. Compl, Ex. A. The Resolution was issued several days after the indictment was returned. Mitchell alleges he had no opportunity to be heard before the Resolution was issued.

Rather than challenge the Resolution in tribal court, Mitchell brought this action seeking a writ of habeas corpus under ICRA, asserting that the Resolution violates his civil rights. The Nation moved to dismiss the Complaint asserting, *inter alia*, tribal sovereign immunity. In response, Mitchell filed an Amended Complaint naming as additional defendants sixteen members of the Tribal Council and the Nation's then-President, Robert Odawi Porter (collectively "Defendants").

Defendants then moved to dismiss the Amended Complaint asserting lack of subject matter jurisdiction and failure to exhaust tribal remedies. Plaintiff opposes the motion to dismiss. The Court held oral argument on February 14, 2011.

## **DISCUSSION**

Defendants assert that this Court lacks subject matter jurisdiction under ICRA because the restrictions imposed under the Resolution do not satisfy the ICRA's custody requirement. This Court must dismiss a claim where the statutory or constitutional power to adjudicate it is lacking. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, the Court draws all inferences in the non-movant's favor. *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 144 (2d Cir. 2011). Facts alleged in the complaint are assumed to be true unless contradicted by documentary evidence. *Id.* Mitchell bears the burden of proving that subject matter jurisdiction exists. *APW v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003).

ICRA imposes certain restrictions upon tribal governments that are similar but not identical to the restrictions on government action imposed under the Bill of Rights in

the United States Constitution.  See 25 U.S.C. § 1302.  Relief under ICRA is limited solely to a petition for writ of habeas corpus.  Section 1303 of ICRA provides:  "[t]he privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe.  *Id.* § 1303.  By limiting the remedy available under ICRA to habeas corpus relief, Congress sought to accommodate two distinct competing purposes:  (1) strengthening the individual rights of tribal members, while (2) promoting tribal self-government.  *Santa Clara Pubelo v. Martinez*, 436 U.S. 49, 62 (1978).

To obtain habeas corpus relief, individuals seeking to enforce ICRA must demonstrate "*detention* by order of an Indian tribe." § 1303 (emphasis added). Detention may be demonstrated by actual physical custody, or by a severe restraint on liberty akin to physical custody.  *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 894-95 (2d Cir.), *cert. denied*, 519 U.S. 1041 (1996).  "Detention" under ICRA is analogous to the custody requirement imposed under other statutes providing for habeas corpus relief.  *Id.* at 891.  The custody requirement strictly limits habeas review "'to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate.'"  *Id.* at 894 (quoting *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973)).  Absent detention, tribal court, not federal district court, is the appropriate forum for adjudicating violations of the Act. *Santa Clara Pubelo v. Martinez*, 436 U.S. 49, 72 (1978) (holding that the ICRA does not create implied private right of action for relief from civil rights violations in federal district court).

4

The Second Circuit has held that an order of permanent banishment by a tribe is a severe restraint on liberty sufficient to satisfy the detention requirement of the ICRA. *Poodry*, 85 F.3d at 895. In *Poodry*, plaintiff tribal members were summarily convicted of treason, permanently disenrolled from the tribe, permanently banished, and stripped of all rights of tribal citizenship. *Id*. at 876. In addition, plaintiff tribal members were ordered to leave tribal territory, harassed and assaulted, and denied electrical service for their homes. *Id.* at 878. The Circuit found that "the existence of the orders of permanent banishment alone — even absent attempts to enforce them — [were] sufficient to satisfy the jurisdictional prerequisites for habeas corpus." *Id.* at 895.

However, short of an order of permanent banishment, federal courts have been reluctant to find tribal restraints severe enough to warrant habeas review. For example, the Second Circuit has held that purely economic restraints are not sufficient to satisfy the custody requirement of § 1303. *Shenandoah v. Halbritter*, 366 F.3d 89, 92 (2d Cir. 2004) ("As a general rule, federal habeas jurisdiction does not operate to remedy economic restraints."), *cert. denied*, 544 U.S. 974 (2005)("*Shenandoah II*"). In *Shenandoah II,* the court held that a tribal resolution permitting the destruction of tribal members' homes was an economic restraint insufficient to invoke ICRA habeas review. 366 F.3d at 92. Even orders of disenrollment from a tribe have been found insufficient to satisfy the detention requirement of ICRA by some courts. *See Jeffredo v. Macarro*, 599 F.3d 913, 919 (9th Cir. 2010) (disenrollment of tribal members was not "detention" under ICRA where members were restricted from entering certain facilities but were not banished or otherwise subject to physical restraint).

In *Shenandoah v. United States*, 159 F.3d 708 (2d Cir. 1998)("*Shenandoah I*"), the Second Circuit found that plaintiff tribal members had not suffered a severe restraint

5

on their liberty akin to detention when they: (1) were terminated from employment; (2) lost their voices in the Nation's governing bodies; (3) lost health insurance; (4) were denied admittance to the Nation's health center; (5) lost quarterly distributions paid to Nation members; (6) were banned from various businesses and recreational facilities; (7) were stricken from Nation membership rolls; (8) were prohibited from speaking to various members; and (9) were denied Nation mailings. *Id*. at 714. Although the restrictions were serious, the Circuit found that they were not as severe as the permanent orders of banishment in *Poodry* and did not satisfy the custody requirement of § 1303. *Id.* Unlike the *Poodry* plaintiffs, the *Shenandoah I* plaintiffs had not been convicted of any crime and retained their right to live on the reservation.

The collective restraints imposed upon Mitchell under the Resolution are insufficient to satisfy ICRA's jurisdictional prerequisite of custody. Mitchell has not been banished, lost his Nation membership, or been convicted of a crime. Although Mitchell characterizes the cumulative effect of the restrictions as imposing "banishment," that assertion is contradicted by the plain language of the Resolution itself. Nothing in the Resolution permanently "banishes" Mitchell from the Nation or revokes his Nation citizenship. Mitchell admits that he is permitted to live on Nation land. *See* Am. Compl. ¶ 46. The collective restrictions imposed on Mitchell do not come close to the severity of those imposed in *Poodry* and found to be "custody". *Poodry*, 85 F.3d at 895.

Most of the restrictions imposed on Mitchell under the Resolution are purely economic in nature. The revocation of Mitchell's business license, the placement of his annuity payments into escrow, and the prohibition on his doing business with other tribal-licensed entities are purely economic restrictions that do not provide a basis for habeas review. Similar economic restraints have been found insufficient to satisfy jurisdiction under ICRA. *See, e.g., Walton v. Tesque Pueblo*, 443 F.3d 1274, 1279 (10th Cir. 2006) (holding that the revocation of a flea market vendor's license to do

6

business at a tribal flea market was insufficient to satisfy ICRA's custody requirement); *Shenandoah I*, 159 F.3d at 713-14 (holding that loss of employment, health care, and annuity payments failed to satisfy ICRA's custody requirement). Likewise, the prohibition on doing business with other Nation-licensed members is an economic restraint insufficient to invoke habeas review. The severity of that restriction is also lessened by the fact that Mitchell lives off the reservation and need not conduct business with Nation-licensed members to satisfy basic necessities.[1] *See Poodry*, 85 F.3d 878 (tribal members had been denied electrical service to their homes). Certainly, Mitchell's economic restrictions are less severe than those imposed by the tribal ordinance permitting destruction of members' homes that was found insufficient to satisfy the "custody" requirement for habeas corpus review in *Shenandoah II*. *See* 366 F.3d at 92.

As to Mitchell's prohibition from entering Nation buildings and businesses (except to obtain health care and defend himself in court), that restriction is also economic in nature to the extent that it bars Mitchell from doing business in Nation buildings, such as the Nation's casino. However, it also contains non-economic properties to the extent that it prohibits Mitchell from participating in social and cultural events that occur in Nation buildings. Nevertheless, barring access to Nation buildings is not a restraint severe enough to permit habeas corpus review. In *Shenandoah I*, the Second Circuit found habeas jurisdiction lacking despite a restriction that prohibited entry into "various [Nation] businesses and recreational facilities," including a complete bar on access to the Nation's health care center. *See Shenandoah I*, 159 F.3d 714; *see also Jeffredo v. Macarro*, 599 F.3d 913, 919 (9th Cir.), (holding that jurisdiction

---

[1] Mitchell asserts that this restriction "forces [him] to leave the Nation to find employment; to purchase gas, groceries, and other household items; and to perform most daily activities." *See* Am. Compl. ¶ 37. Yet, by his own admission, Mitchell currently resides in Gowanda, New York, *id.* ¶ 2, which is outside Nation territory.

under ICRA was lacking even though resolution disenrolled members from tribe and denied them access to all tribal buildings and services, including health and education benefits), *cert. denied*, 130 S.Ct. 3327 (2010).  Mitchell, in contrast, is permitted to enter Nation health care centers as long as he provides advance notice before doing so.

## **CONCLUSION**

For the reasons stated above, the restrictions imposed upon plaintiff Bergal Mitchell, III, under the Resolution, when weighed cumulatively, are not "custody" under § 1303 of ICRA.  Accordingly, the Court lacks subject matter jurisdiction and Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is granted.  The Amended Complaint is dismissed and the Clerk shall terminate the action.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: March 29, 2013